UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JAMES HARRIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2125** |
| **HKA ENTERPRISES, INC.** | **SECTION "T" (2)** |
| **CONSOLIDATED WITH** | |
| **BRUCE SCOTT** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-2888** |
| **HKA ENTERPRISES, INC.** | **SECTION "T" (2)** |

## ORDER AND REASONS

Before the Court are the following Motions: Plaintiffs' Motion to Accept Partial Payment for Backpay Without Waiving FLSA Rights (Rec. Doc. 83); a Motion for Summary Judgment filed by Plaintiff, James Harris in Civil Action 06-2125 (Rec. Doc. 86); and a Motion for Summary Judgment requesting dismissal of both the consolidated Harris (06-2125) and Scott (07-2888) actions filed by Defendant, HKA Enterprises, Inc. (Rec. Doc. 96). HKA Enterprises, Inc. filed an Opposition to Plaintiff's Motion to Accept Partial Payment (Rec. Doc. 89) and filed an Opposition to Harris's Motion for Summary Judgment. (Rec. Doc. 88). Those Motions came for hearing without oral argument on October 17, 2007, and were submitted on the briefs. HKA Enterprises, Inc.'s Motion for Summary Judgment was opposed by Plaintiffs (Rec. Doc. 103). That Motion came for hearing with oral argument on January 10, 2008, and was taken under submission. The Court, having considered the arguments of the parties, the Court record, the law and applicable jurisprudence, is fully advised in the premises and ready to rule.

## I.     BACKGROUND

### A.     FACTS

After Hurricane Katrina, HKA Enterprises, Inc. (hereinafter, "HKA") contracted with CH Company (hereinafter, "CH") to provide personnel for hurricane recovery services in connection with CH's contract with the Federal Emergency Management Agency (hereinafter, "FEMA") and the Army Corps of Engineers (hereinafter, "COE").  This consolidated action arises out of the Plaintiffs' employment on these two HKA projects: the FEMA project and the COE project, respectively.

The scope of HKA's engagement on the FEMA project was to provide engineering strike team members to assess and analyze sites for FEMA trailers and to provide civil engineers, structural engineers, construction managers, etc., to staff the project.  CH informed HKA that these employees would be paid an annual salary of $90,000, the going rate at that time for professional engineers and construction managers; however, FEMA imposed an administrative requirement that the salary be paid as an hourly rate.  FEMA also mandated that a daily work record be kept by the employees.  Due to the emergency nature of the work, HKA guaranteed a minimum of forty (40) hours a week but informed the employees that they would most likely work and, should be able to work, between sixty (60) and eighty (80) hours a week.  Work associated with the FEMA project began within days of Hurricane Katrina passing through the area.

On October 1, 2005, CH requested HKA provide managers and superintendents to manage and monitor the subcontractors performing debris removal and related inspection work under contract between CH and the COE.  Like FEMA, the COE required that the annual salary be paid as an hourly rate and likewise mandated that a daily work record be kept by the employees.  Most

of the work on the COE project concluded sixty (60) days later on December 2, 2005. Similar to the FEMA project, these employees were guaranteed a minimum of forty (40) hours a week but were informed that they would most likely work and should be able to work between sixty (60) and eighty (80) hours a week.

HKA considered the personnel it provided for these projects exempt from overtime wages mandated by the Fair Labor Standards Act (hereinafter, "FLSA"). Accordingly, HKA did not pay any overtime, just an hourly wage computed in accordance with the salary imposed by FEMA and the COE. In early 2006, HKA began to hear reports that the work being performed on the FEMA project was not of the engineering and managerial level. HKA contacted CH and legal counsel and requested they review the matter. Following those discussions, HKA voluntarily decided to reclassify all of the FEMA project personnel as non-exempt beginning April 2, 2006, and pay them overtime. The employees were notified by letter. HKA also made a supplemental payment to all FEMA project employees in an amount equal to the overtime premium they would have earned for any work performed between September 1, 2005 to April 1, 2006, as if they were not exempt. All but seven (7) employees on the FEMA project accepted the sum and signed a waiver of claims.

On April 20, 2006, approximately eighteen (18) days after HKA decided to reclassify the FEMA project workers as discussed *supra*, James Harris (hereinafter, "Harris") filed Civil Action 06-2125 in this Court (hereinafter, "Harris Action"), seeking overtime, liquidated damages, and attorney's fees for work performed on the FEMA project. The claim was based solely upon the FLSA. Rec. Doc. 1. Harris was one of the workers who refused to accept any supplemental payment from HKA. The Harris Action was conditionally certified as a collective action by this Court in February 2007. Rec. Doc. 49. Further, the plaintiffs in the Harris action moved to amend

the original complaint to add the HKA employees who worked on the COE project. The Court instructed plaintiff to file a new suit and consolidate the claims.

At the time HKA decided to reclassify the FEMA project workers as eligible for overtime, it did not do so with the COE project workers because that project had been completed and there were no employees to reclassify. Nevertheless, HKA decided to make supplemental payments to former COE project workers which amounts reflected an amount equal to the overtime premium they would have earned for any work on the project if they had been non-exempt. In February 2007, HKA requested the supervision and approval of the Department of Labor (hereinafter, "DOL") in making the payments and in attempting to locate those former employees. DOL approved the propriety and amount of the supplemental payments made to the COE project employees on May 15, 2007, and HKA issued the supplemental payments along with a DOL waiver form to the former employees or their representatives. At least eight (8) of these former employees accepted payment and one waived any future rights to payment for work on the COE project. HKA did all of this without determining or conceding liability.

Later that same day, at 4:34 p.m. on May 15, 2007, Bruce Scott and twenty-one (21) former COE project workers filed Civil Action 07-2888 against HKA seeking claims for overtime, liquidated damages and attorney's fees under the FLSA (hereinafter, "Scott Action").

The Harris and Scott actions were consolidated on June 6, 2007. Rec. Doc. 76. The case was subsequently transferred to Judge G. Thomas Porteous, who conditionally certified the Scott Action in January 2008. Rec. Doc. 111. This matter was transferred back to this Court on March 30, 2008. Rec. Doc. 120.

### B.    MOTIONS BEFORE THE COURT

### *(1)     HKA's Motion for Summary Judgment.  (Rec. Doc. 86)*

HKA brought a motion for summary judgment in both actions seeking dismissal of both actions as a matter of law.  First, HKA argues that there is not any "unpaid overtime compensation" to be awarded now or at trial because it has tendered supplemental payments to all Plaintiffs, and those alleged to be similarly situated, in an amount equal to the overtime compensation they would have earned had they been originally classified as non-exempt.  Thus, HKA argues the named Plaintiffs and those similarly situated have not suffered any damages compensable at trial.  Second, HKA argues that liquidated damages and attorneys fees under the FLSA are not available because the disputed overtime compensation has been tendered in advance of any demand or suit.  Third, HKA argues that the FLSA is not applicable to the facts of this case because it was enacted to protect covered workers from substandard wages and oppressive working hours and the terms of employment offered by HKA on both the FEMA and COE project were not oppressive or substandard evidenced by the type of work performed and the salaries paid.  Fourth, HKA argues that claims involving insubstantial or de minimis periods of overtime worked (such as the claims herein) are not compensable, and do not support a claim for unpaid wages, liquidated damages, or attorney's fees under the FLSA.  Fifth, as a government contractor, HKA argues that if it pleads and proves that the act or omission complained of was in good faith and in reliance on an administrative regulation, order, ruling or interpretation of any agency of the United States, then it can have no liability under the FLSA.  HKA argues it was in good faith because it compensated the employees on both projects in accordance with the express requirements and requests of FEMA and the COE and further, was not free to depart from those requirements.

Next, HKA argues that liquidated damages are not appropriate where an employer's

interpretation of the law, even if incorrect, was based, in part, on industry practice. Because both CH and HKA believed, in accordance with common practice in their businesses, that employees such as professional civil and structural engineers and managers were exempt from overtime, then HKA should not be penalized for interpreting the law incorrectly. HKA also argues that it acted reasonably and in good faith in an effort to comply with the FLSA and treat its employees fairly by voluntarily consulting legal counsel, issuing supplemental payments, reclassifying employees, and seeking DOL assistance and approval in issuing supplemental payments. Finally, HKA argues that some of the Plaintiffs' claims are foreclosed by their execution of waivers in connection with their acceptance of supplemental payments. As to those Plaintiffs, HKA urges the Court should find their claims waived.

In opposition, Plaintiffs respond that HKA's argument that it acted in good faith and had reasonable grounds to believe that Plaintiffs are exempt is an affirmative defense and does not have any bearing on summary judgment. Plaintiffs further argue that HKA did not act in good faith and there is no reasonable grounds to believe that the employee Plaintiffs were professionals because they do not fit the FLSA definition of professionals. Third, Plaintiffs argue that HKA can't rely on the industry standard definition of "professional" because they are mandated to follow the definition imposed by federal regulation and therefore, the industry practice definition argument must fail. Fourth, Plaintiffs argue they were not managers or construction managers and are not exempt under the Administrators exemption of the FLSA. Plaintiffs assert they were not paid on a salary or fee basis, did not perform skilled/managerial activities and had no discretion in how to go about their daily tasks and therefore, the employees were never exempt from FLSA overtime payments. Sixth, the cases cited by HKA are distinguishable and not applicable. Seventh, Plaintiffs argue that the de

minimis rule does not apply because Plaintiffs worked eight-four (84) hour weeks and should have been paid overtime for the forty-four (44) hours worked over the standard forty (40). Forty-four hours, according to Plaintiffs, is not de minimis and any argument that HKA's payment to the workers eradicates any unpaid wage claim is without merit. Next, Plaintiffs urge that summary judgment should be denied because they dispute that they were professional engineers and construction managers and therefore, a fact issue remains. Finally, Plaintiffs argue that HKA's payments are unlawful and unenforceable because they were paid with neither court approval nor DOL supervision.

*(2)     Plaintiffs' Motion to Accept Payments for Back Pay.  (Rec. Doc. 83)*

Plaintiffs assert that in order to accept the checks tendered by HKA, they are required by HKA to waive all rights they hold under the FLSA. Rec. Doc . 83 at p.4. Plaintiffs argue that they should be able to cash the checks without having to sign a waiver of their rights under the FLSA because: (1) HKA has acted improperly in failing to notify the DOL that a suit was pending when they sought approval of the overtime payments; (2) the FLSA does not contemplate allowing an employer to violate federal labor law by mailing out checks after the employer is caught; and (3) if the Plaintiffs are forced to sign the waiver, HKA will have "circumvented accountability for clear violations of federal labor law" and in essence "would be absolved of all liability and defeat a collective action lawsuit by doing nothing more than paying former employees part of what they are owed." Rec. Doc. 83.

Defendant's counter: (1) the supplemental payments to the COE project workers were full payments of all overtime allegedly due and therefore these workers have not suffered any damages under the FLSA and cannot assert any rights under the FLSA; (2) HKA's consultation with the DOL

is evidence of its good faith and a defense to liquidated damages and attorneys fees; (3) HKA has not acted improperly and has not improperly communicated with potential collective action members; and (4) HKA has also issued supplemental payments for all amounts due as overtime to the FEMA project workers and therefore, the workers have not suffered any damages under the FLSA and cannot assert any rights under the FLSA.

### *(3)     Plaintiffs' Motion for Summary Judgment.  (Rec. Doc. 86)*

Harris's motion for summary judgment argues that he and all those similarly situated are entitled to summary judgment because: (1) HKA has admitted guilt in its failure to pay overtime on both the COE and FEMA projects because it "turned itself" into the DOL; (2) by sending the amounts allegedly owed for overtime to COE and FEMA project employees, HKA has admitted violating the FLSA; (3) because HKA has admitted guilt, all Plaintiffs are entitled to summary judgment finding that they are owed overtime wages, attorneys fees and the penalty provided by the FLSA; and (4) Plaintiffs assert that the checks tendered to the employees are an attempt to circumvent the FLSA so that HKA does not have to pay liquidated damages, attorneys fees and costs as mandated by the statute and this type of conduct should not be allowed.  Rec. Doc. 86.

HKA counters that the Plaintiffs' arguments in support of summary judgment are unsupported, inaccurate and immaterial.  Further, HKA argues that the plaintiffs are incorrect that voluntary payments of disputed unpaid overtime compensation constitute an admission of liability under the FLSA.  In addition, HKA argues that its voluntary consulting with the DOL regarding supplemental payment on the COE project does not amount to an admission of liability especially since it expressly denied liability in the process.  Rec. Doc. 88 at pp. 8-9.  HKA also argues that its payments to both the COE and FEMA employees were not improperly motivated and were done in

good faith. Rec. Doc. 88 at p. 11. Finally, HKA asserts that it took steps to pay the workers on both projects without any legal requirement to do so in a good faith effort to treat its employees fairly. HKA submits that Plaintiffs' arguments that any payments were made to circumvent the FLSA is meritless and manufactured by Plaintiffs' counsel as a way for his clients to obtain a windfall and for counsel to obtain attorney's fees which continue to accrue.

### III.   LAW AND ANALYSIS

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FRCP 56(C).  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Stults v. Conoco, Inc.,* 76 F.3d 651, 655-56 (5th Cir. 1996) *citing, Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 912-13 (5th Cir.).  When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.  The nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis supplied); *Tubacex, Inc. v. M/V RISAN*, 45 F.3d 951, 954 (5th Cir. 1995).  Thus, where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* at 588.

HKA's argument that by voluntarily tendering payment to all COE and FEMA project employees, all those employees, whether currently a plaintiff or similarly situated, are prohibited

from bringing a suit under the FLSA because currently there is not any "unpaid overtime compensation" due has merit and is supported by the text of the FLSA.

> Section 216(b) of the FLSA provides, in pertinent part:
>
>> (b) Damages; right of action; attorney's fees and costs; termination of right of action
>>
>> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or **their unpaid overtime compensation**, as the case may be, and in an additional equal amount as liquidated damages. (Emphasis added)

29 U.S.C. § 216(b).

The undisputed evidence demonstrates that HKA has tendered payments to all named Plaintiffs and those alleged to be similarly situated in an amount equal to the overtime compensation that they would have earned had they been correctly classified as non-exempt at the time they worked on the COE and FEMA projects. The amount of hours worked over the standard forty (40) hours a week cannot be disputed because Plaintiffs recorded their hours each day pursuant to administrative requirements by both FEMA and the COE. Further, Plaintiffs have not put forth any evidence demonstrating that they are entitled to more overtime pay for additional hours worked beyond the daily logs of hours submitted to HKA on these projects. Plaintiffs' only response is to argue that they were never professionals and were not employees who should have been exempt. However, that argument does not change the fact that HKA paid the employees both their agreed upon hourly rate and then supplemented those payments by paying overtime to all the COE project employees and FEMA project employees. The fact that HKA made these payments later is of no consequence as the FLSA does not provide a time frame or limitations period.

Plaintiffs' argument that they were not aware of the hourly rate and thus possibly entitled to more overtime pay, is foreclosed by the contract attached to Plaintiffs' Opposition Memorandum, which provides that Harris would be compensated at the rate of $46.00 per hour for all hours worked each week (which equals approximately $95,000 a year based upon a forty (40)hour work week). *See* Exhibit "B" attached to Rec. Doc. 106. The workers have been tendered the amounts due under the FLSA for overtime compensation, and under the text of the FLSA, there is no longer any "overtime compensation due" from HKA to these Plaintiffs.

Nevertheless, and assuming Plaintiffs are correct that they never should have been classified as exempt employees, Plaintiffs are not entitled to liquidated damages, attorneys fees, and costs under the FLSA statute if HKA succeeds on its defense that it, in good faith, relied upon the COE and FEMA regulations and orders in failing to pay the overtime initially.

29 U.S.C. § 258 provides:

> In any action or proceeding commenced prior to or on or after May 14, 1947 based on any act or omission prior to May 14, 1947, **no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938**, as amended [29 U.S.C.A. § 201 et seq.], the Walsh-Healey Act [41 U.S.C.A. § 35 et seq.], or the Bacon-Davis Act [40 U.S.C.A. § 276a et seq.], **if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any administrative regulation, order, ruling, approval, or interpretation, of any agency of the United States, or any administrative practice or enforcement policy of any such agency with respect to the class of employers to which he belonged.** Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect. (Emphasis added) .

As this statute instructs, if HKA establishes the good faith defense, the FLSA claims by all Plaintiffs, including those for liquidated damages, attorney's fees, and costs are precluded. In *Northwest Airlines v. Jackson*, 185 F. 2d 74, 82 (8th Cir. 1950), the U.S. Eighth Circuit Court of Appeals found that Northwest Airlines' good faith reliance on an opinion by the National Railway Labor Panel precluded the award of liquidated damages under the FLSA. In the *Northwest* case, Northwest Airlines was awarded a government contract to modify bombers for the U.S. Army. The manufacturing employees' initial work was considered an "integral part" of the company's airline operations and was, therefore, covered by the Railway Labor Act, not the FLSA. However, as the project "mushroomed quickly" in light of the national emergency (World War II), uncertainty arose over whether the employees' duties continued to have sufficient connection to the integral function of Northwest Airlines' business to be covered by the Railway Labor Act rather than the FLSA. *See Jackson v. Northwest Airlines*, 76 F. Supp. 121, 131 (D. Minn. 1948). Uncertain of the applicability of federal wage and hour law, Northwest Airlines continued to pay its employees overtime pursuant to the Railway Labor Act. *Jackson,* 76 F. Supp. at 125. Several employees filed suit, and the district court held that Northwest Airlines misinterpreted the law in refusing to pay overtime according to the FLSA, rather than the Railway Labor Act. The district court refused to award the employees liquidated damages because it concluded that Northwest Airlines' mistake was reasonable "under these circumstances." *Jackson,* 76 F. Supp. at 131. On appeal, the Eighth Circuit adopted the district court's findings of fact and refused to disturb its determination of Northwest Airlines' good faith. In so holding, the Eighth Circuit found that Northwest's reliance on the National Railway Labor Panel's ruling in its payment under the Railway Labor Act as opposed to the FLSA, while ultimately incorrect, was in good faith and in conformity with its understanding of that order and ruling of an

agency of the United States. *Northwest Airlines*, 185 F.2d at 76- 82.  Accordingly, Northwest was not held responsible for liquidated damages and attorneys fees under the FLSA.

Plaintiffs argue that HKA cannot prevail on its argument that it acted in good faith because employees with only high school degrees were classified as professionals and HKA had no reasonable grounds for classifying Plaintiffs as professionals.  Rec. Doc. 106 at pp. 4-5.  Plaintiffs argue they were paid on an hourly basis, were not salaried and do not fit the FLSA definition of a professional.[1]  Further, Plaintiffs, relying on the testimony of James Harris, argue that they were assigned site assessment duties and were to "look and make sure that there wasn't water or mud and if they (the potential trailer sites) had electrical hookup, water and sewage hook up."  *See* Exhibit "C" attached to Rec. Doc. 106 at p. 99.  These duties, according to Plaintiffs, are not "professional" in nature.  Additionally, Plaintiff, George Garbin, testified that he had never been trained as a professional engineer and did not have to be a professional engineer to do his job.  *See* Exhibit "A" attached to Rec. Doc. 106 at pp. 5, 13.  Plaintiffs submit that these facts demonstrate that Plaintiffs' job duties and training are the type that no reasonable person could conclude are "professional" and

---

[1] Plaintiffs rely on 29 C.F.R. § 541.300(a) in support.  That section provides:

> Section 541.300(a)
>
> The term "employee employed in a bona fide professional capacity" in section 13(a)(1) of the Act shall mean any employee:
> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week (or $380 per week, if employed in American Samoa by employers other than the Federal Government), exclusive of board, lodging, or other facilities; and
> (2) Whose primary duty is the performance of work:
> (i) Requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction; or
> (ii) Requiring invention, imagination, originality or talent in a recognized field of artistic or creative endeavor.

therefore, HKA's good faith argument should be rejected.

After reviewing all the evidence in the light most favorable to the Plaintiffs, the Court finds that the evidence presented by HKA demonstrates it is entitled to the good faith defense. The declaration of Gary Davis (Director of Operations for HKA) provides that the scope of HKA's engagement for the FEMA and the COE projects was provided to HKA by these agencies. *See* Exhibit "7" attached to Rec. Doc. 96. The affidavit further provides that FEMA required an "engineering strike team" to assess and analyze sites for FEMA trailers and requested "civil engineers, structural engineers, construction managers, and similar qualified professionals to staff the job." *See* Exhibit "7" attached to Rec. Doc. 96 at paragraph 6. Davis also attests that FEMA imposed an administrative requirement that these professionals would be paid an annual salary upwards of $90,000 to be computed on an hourly basis. *See* Exhibit "7" attached to Rec. Doc. 96 at paragraph 8. Regarding the COE project, the COE required that HKA provide "managers and superintendents to monitor and manage the subcontractors performing debris removal and related inspection work." *See* Exhibit "7" attached to Rec. Doc. 96 at paragraph 12. Like FEMA, COE required that these workers be paid upwards of $90,000 annually with an hourly rate of $45.00 an hour specified in the individual agreements between HKA and the employee. *See* Exhibit "7" Rec. Doc. 96 at paragraph 13.

This evidence presented by HKA is not disputed by the Plaintiffs. Rather, they argue that they were not in fact professionals and therefore, could never be classified as such. However, under the case law discussed *supra*, it is not the Plaintiffs' subjective classification that is the determinative factor. Rather, it is whether HKA was in good faith in classifying the employees initially as professionals because they relied upon FEMA and COE's representations that these employees

would be paid upwards of $90,000 annually to perform management, supervision and engineering services.  The Court finds that HKA was justified in its belief.  The undisputed evidence demonstrates that the scope of work FEMA and COE requested and required was for professionals.  HKA relied upon those representations when hiring and paying the employees.  Once HKA learned that the scope of the work actually performed may have differed from that agreed upon, it took actions to remedy the overtime situation and in fact, in good faith, paid the employees.  Under these facts, the Court finds that HKA's actions in initially classifying the employees on the COE and FEMA projects as professionals and exempt from the FLSA was based upon its good faith reliance on, and in conformity with, its understanding that the employees would be performing professional duties for FEMA and COE in accordance with those agencies orders.  Accordingly, HKA has prevailed on its defense and section § 258 bars Plaintiffs from recovering liquidated damages, attorneys fees and costs under the FLSA.  Defendant's Summary Judgment is therefore, granted on this issue.

**IV.     CONCLUSION**

For the reasons stated herein, the Court **GRANTS** HKA's Motion for Summary Judgment and **DENIES** Plaintiffs' Motion for Summary Judgment.  Because of this finding, the Court pretermits discussion of the remaining arguments presented by all parties in those Motions.  Additionally, Plaintiffs' Motion to Accept Partial Payment for Back Pay is **DENIED AS MOOT.**

Accordingly,

**IT IS ORDERED** that HKA Enterprises, Inc.'s Motion for Summary Judgment (Rec. Doc. 96) is **GRANTED**.  HKA Enterprises, Inc. shall be dismissed from Civil Action 06-2125 and Civil Action 07-2888 action with prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Summary Judgment (Rec. Doc. 86) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Accept Back Pay Without Waving FLSA rights (Rec. Doc. 83) is **DENIED AS MOOT.**

New Orleans, Louisiana this 31st day of March, 2008.

**UNITED STATES DISTRICT JUDGE
JAY C. ZAINEY**